UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TODD HOWELL, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:22-CV-01160 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, | : | MARCH 20, 2025 |
|     Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 107) AND MOTION TO SEAL (DOC. NO. 105)**

**I.    INTRODUCTION**

The plaintiff, Todd Howell ("Mr. Howell"), brings this suit against Yale University ("Yale"), asserting a claim of intentional infliction of emotional distress ("IIED"). Complaint (Doc. No. 1-1) ("Compl."). Before the court is Yale's Motion for Summary Judgment. Defendant's Motion for Summary Judgment (Doc. No. 107) ("Def.'s Mot."); see also Defendant's Memorandum in Support of Motion for Summary Judgment (Doc. No. 108) ("Def.'s Mem."); Defendant's Reply in Support of Motion for Summary Judgment (Doc. No. 121) ("Def.'s Reply"). Mr. Howell opposes the Motion. Plaintiff's Opposition to Motion for Summary Judgment (Doc. No. 117) ("Pl.'s Opp'n). In addition, Yale has filed a related Motion to Seal. Defendant's Motion to Seal (Doc. No. 105) ("Def.'s Mot. Seal"); see also Defendant's Memorandum in Support of Motion to Seal (Doc. No. 106) ("Def.'s Mem. Seal").

For the reasons stated below, the court grants Yale's Motion for Summary Judgment, and grants in part and denies in part Yale's Motion to Seal.

1

## II. BACKGROUND

### A. Factual Background[1]

Mr. Howell, a black man, owns and operates N.E.S.A.I.M. LLC ("NESAIM"). Defendant's Local Rule 56(a)(1) Statement (Doc. No. 112) ("Def.'s 56(a)(1) Stmt.") at ¶¶ 1–3; Plaintiff's Local Rule 56(a)(2) Statement (Doc. No. 116) ("Pl.'s 56(a)(2) Stmt.") at ¶¶ 1–3. He began working as a consultant to AGCT-Corp. ("AGCT"), which is owned and operated by Charles Fetters ("Mr. Fetters"). Def.'s 56(a)(1) Stmt. at ¶¶ 4, 8; Pl.'s 56(a)(2) Stmt. at ¶¶ 4, 8. AGCT, doing business as NESAIM, formed a contract with Yale on October 31, 2019, to remove snow from portions of Yale's campus. Def.'s 56(a)(1) Stmt. at ¶ 5; Pl.'s 56(a)(2) Stmt. at ¶ 5. Mr. Howell, and his colleagues, were scheduled to meet with Yale representatives about the snow removal contract on November 29, 2019. Def.'s 56(a)(1) Stmt. at ¶ 9; Pl.'s 56(a)(2) Stmt. at ¶ 9. Among those who were to attend the meeting on behalf of Yale was Joseph Signore ("Mr. Signore"). See Def.'s 56(a)(1) Stmt. at ¶¶ 9–10; Pl.'s 56(a)(2) Stmt. at ¶¶ 9–10. Yale maintains, and Mr. Howell denies, that Mr. Signore and Mr. Howell had a "history of animosity" arising from a disputed mulch delivery that occurred about 15 years before the scheduled meeting. Def.'s 56(a)(1) Stmt. at ¶ 14. Mr. Howell asserts that he harbors no animosity toward Mr. Signore. Pl.'s 56(a)(2) Stmt. at ¶¶ 14. The parties agree that the mulch incident did not involve racial animus. Def.'s 56(a)(1) Stmt. at ¶ 15; Pl.'s 56(a)(2) Stmt. at ¶ 15.

---

[1] As it must, the court construes all disputed facts in the light most favorable to the non-moving party. It notes where the parties disagree. The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts. Ordinarily, the court would cite to the non-movant's Local Rule 56(a)2 Statement where the parties agree because, in accordance with Local Rule 56(a)2, they should contain a reproduction of each numbered paragraph from the moving party's Local Rule 56(a)1 Statement. Here, however, Mr. Howell did not comply with Local Rule 56(a)(2); thus, the court will cite to both Rule 56(a) Statements where appropriate.

Mr. Howell claims, though Yale does not admit, that another Yale representative, Paul Catalano ("Mr. Catalano") called Mr. Howell before the scheduled meeting and urged him not to attend it because Mr. Signore expressed a dislike of Mr. Howell. Def.'s 56(a)(2) Stmt. at ¶ 20; Howell Affidavit (Doc. No. 122) ("Howell Aff.") at ¶¶ 6–7. Mr. Catalano said, according to Mr. Howell, that Mr. Signore had blocked Mr. Howell from receiving contracts from Yale for 17 years. Def.'s 56(a)(2) Stmt. at ¶ 20; Howell Aff. at ¶¶ 6–7. Notwithstanding the supposed warning, the parties agree Mr. Howell, Mr. Fetters, Carlos Arroyo ("Mr. Arroyo") a NESAIM employee, and Andrea Wolfe ("Ms. Wolfe), Mr. Howell's former romantic partner, attended the November 29 meeting with Yale. Def.'s 56(a)(2) Stmt. at ¶¶ 10, 13, 42; Pl.'s 56(a)(2) Stmt. at ¶¶ 10, 13, 42. Attending the meeting on behalf of Yale was Mr. Signore, Mr. Catalano, and Sal Garibaldi ("Mr. Garibaldi"). Def.'s 56(a)(1) Stmt. at ¶¶ 10, 13, 32; Pl.'s 56(a)(2) Stmt. at ¶¶ 10, 13, 32. Mr. Howell asserts, and Yale agrees that Mr. Howell makes this assertion that, during the meeting, Mr. Signore made racially discriminatory comments to Mr. Howell about black people. Def.'s 56(a)(1) Stmt. at ¶ 11; Pl.'s 56(a)(2) Stmt. at ¶ 11. While Mr. Fetters and Ms. Wolfe testified during their depositions that they did not recall Mr. Signore's supposed comments, Mr. Arroyo testified during his deposition that he did remember the comments. Def.'s 56(a)(1) Stmt. at ¶¶ 12–13; Pl.'s 56(a)(2) Stmt. at ¶¶ 12–13.

Mr. Howell and Mr. Signore exchanged "collegial" text messages on November 29, 2019, and December 25, 2019. Def.'s 56(a)(1) Stmt. at ¶¶ 43–44.[2] While Mr.

---

[2] The court notes Yale refers to text messages between Mr. Howell and Mr. Signore as being dated November 28 and 29, 2022. See Def.'s 56(a)(1) Stmt. at ¶ 43 (describing Defendant's Exhibit G). However, the cited exhibit depicts text messages dated November 11, 28, and 29, 2019. Defendant's Exhibit G (Doc. No. 117-8) ("Def,'s Ex. G") at 2–3.

3

Howell agrees that he texted Mr. Signore, he maintains that these messages do not undermine the emotional impact of Mr. Signore's alleged comments. See Pl.'s 56(a)(2) Stmt. at ¶ 44.

AGCT, doing business as NESAIM, removed snow from Yale's campus on five occasions from 2019 to 2020. Def.'s 56(a)(1) Stmt. at ¶ 16.[3] Sometime in the middle of 2020, Mr. Fetters asked Mr. Garibaldi to terminate the contract, citing his poor health and limited snow; Mr. Garibaldi agreed to this request. Def.'s 56(a)(1) Stmt. at ¶ 18.[4]

Mr. Howell was diagnosed with moderate recurrent major depression and generalized anxiety disorder before the snow removal contract was formed. Def.'s 56(a)(1) Stmt. at ¶ 25; Pl.'s 56(a)(2) Stmt. at ¶ 25. He received mental health treatment at Stony Creek Wellness Group ("Stony Creek") from Tricia Mignosa ("Ms. Mignosa"), APRN, LCSW, and Jody Farrell ("Ms. Farrell"), LPC. Def.'s 56(a)(1) Stmt. at ¶¶ 21, 25; Pl.'s 56(a)(2) Stmt. at ¶¶ 21, 25. Mr. Howell visited the facility for treatment at various times in 2018 and on September 18, 2019, December 4, 2019, March 4, 2020, and April 19, 2021. Def.'s 56(a)(1) Stmt. at ¶¶ 26–30, 35–36; Pl.'s 56(a)(2) Stmt. at ¶¶ 26–30, 35–36; see Defendant's Exhibit F (Doc. No. 112-7) ("Def.'s Ex. F").[5, 6] The Stony Creek medical records mention neither Mr. Howell's experience with Yale, nor attribute Mr.

---

[3] While Mr. Howell admits this is correct, he denies the fact as being irrelevant or immaterial. Pl.'s 56(a)(2) Stmt. at ¶ 16. The court concludes the fact is relevant and deems it admitted.

[4] Mr. Howell admits this statement is accurate but seeks to deny it because it is irrelevant or immaterial. Pl.'s 56(a)(2) Stmt. at ¶ 18. The court disagrees, and deems it admitted.

[5] Mr. Howell left paragraph 28 of his Local Rule 56(a)(2) Statement blank. Accordingly, the court deems the corresponding paragraph of Yale's 56(a)(1) Statement admitted. See Local Rule 56(a)2–3.

[6] Yale refers to treatments occurring on March 4, 2022. Def.'s 56(a)(1) Stmt. at ¶¶ 31–32. While Mr. Howell does not challenge this date as being inaccurate, see Pl.'s 56(a)(2) Stmt. at ¶¶ 31–32, the court notes the medical records show Mr. Howell received treatment on March 4, 2020. Def.'s Ex. F at 21–22. Accordingly, the court will construe statements regarding Mr. Howell's March 4, 2022 treatments to mean March 4, 2020.

Howell's mental health treatments to his encounters with Yale. See Def.'s 56(a)(1) Stmt. at ¶¶ 27–40. Mr. Howell admits only that the records show he was treated by Ms. Mignosa and claims that his "meetings for purposes of mental health therapy" were conducted by Ms. Farrell. See Pl.'s 56(a)(2) Stmt. at ¶¶ 29–40. The court, having reviewed the Stony Creek medical records, concludes they do not contain any reference to Mr. Howell's experience with Yale, and they do not suggest Mr. Howell's mental health was impaired by the incidents at issue in this lawsuit. See Def.'s Ex. F.

Mr. Howell maintains Stony Creek provided him with mental health therapy, which was exclusively administered by Ms. Farrell, and that she did not take session notes. Pl.'s 56(a)(2) Stmt. at ¶¶ 29–40; Howell Aff. at ¶¶ 9, 14–15. Mr. Howell asserts that he was treated by Ms. Farrell on approximately 40 occasions between April 2018 and December 6, 2021, during which he says he discussed the discriminatory comments made by Yale employees and the emotional distress those comments caused him. Pl.'s 56(a)(2) Stmt. at ¶¶ 24, 29–40; Howell Aff. at ¶ 14. The court notes that the medical records reflect 14 appointments by Mr. Howell at Stony Creek from April 4, 2018 to December 5, 2021. See Def.'s Ex. F. In connection with those appointments, the court is unable to find a single reference to Ms. Farrell. See id. The records reflect Ms. Mignosa treated Mr. Howell for various medical conditions, including depression and anxiety. See id. The records show Mr. Howell was diagnosed with moderate recurrent major depression and generalized anxiety disorder during an April 4, 2018, visit with Ms. Mignosa. Def.s' Ex. F at 2. However, the court cannot locate within the records any suggestion that Mr. Howell received treatment as a result of the November 19, 2019, meeting with Yale. See id. at 1–24 (Mr. Howell was treated on

April 4, 2018, May 1, 2018, May 30, 2018, July 30, 2018, August 31, 2018, October 2, 2018, February 5, 2019, March 12, 2019, August 7, 2019, September 18, 2019, December 4, 2019, March 4, 2020, and April 19, 2021, while each of these records mentions his anxiety or depression, none mention Yale or the severe emotional distress at issue here).

Mr. Fetters testified during his deposition that Mr. Howell told him he experienced emotional distress because of comments made by Mr. Signore.  Def.'s Rule 56(a)(1) Stmt. at ¶ 41; Pl.'s Rule 56(a)(2) Stmt. at ¶ 41.  Mr. Fetters explained, however, that he believed this emotional distress was caused by the mulch dispute and not the November 29, 2019 meeting.  Def.'s Rule 56(a)(1) Stmt. at ¶ 41; Pl.'s Rule 56(a)(2) Stmt. at ¶ 41.  Ms. Wolfe testified during her deposition that she could not remember whether Mr. Howell ever experienced emotional distress because of the alleged comments at issue.  Def.'s Rule 56(a)(1) Stmt. at ¶ 42; Pl.'s Rule 56(a)(2) Stmt. at ¶ 42.  While Mr. Howell admits Mr. Fetters and Ms. Wolfe so testified, he maintains that he did not typically discuss his mental health with either Mr. Fetters or Ms. Wolfe. Pl.'s 56(a)(2) Stmt. at ¶¶ 41–42.

B.  Procedural Background

On August 7, 2022, Mr. Howell and NESAIM sued Yale in Connecticut state court asserting claims under state and federal law arising from Yale's alleged breach of the snow removal contract and discriminatory comments Mr. Signore allegedly made to Mr. Howell.  See Compl.  Yale removed the case to federal court, invoking federal question jurisdiction under section 1331 of title 28 of the U.S. Code.  Notice of Removal (Doc. No. 1).

On September 20, 2022, Yale filed a Motion to Dismiss (Doc. No. 12), which the court granted in part and denied in part without prejudice. Ruling on Motion to Dismiss (Doc. No. 71). On September 21, 2023, Yale filed a second Motion to Dismiss (Doc. No. 70), which the court granted, thereby dismissing all claims brought by NESAIM. Ruling on Motion to Dismiss (Dkt. No. 87). On October 4, 2024, Yale filed a third Motion to Dismiss (Doc. No. 102) certain of Mr. Howell's claims. The court granted the Motion, absent Mr. Howell's objection. Ruling on Motion to Dismiss (Doc. No. 123). As a result, only Mr. Howell's IIED claim remains. See id.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

7

**IV.    DISCUSSION**

    A.    <u>Motion for Summary Judgment</u>

In order for a plaintiff to successfully bring an IIED claim, he must present evidence establishing four elements: (1) "the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct;" (2) "the conduct was extreme and outrageous;" (3) "the defendant's conduct was the cause of the plaintiff's distress;" and (4) "the emotional distress sustained by the plaintiff was severe."  <u>Appleton v. Bd. of Educ. of Town of Stonington</u>, 254 Conn. 205, 210 (2000) (citation and internal quotation marks omitted).

Yale argues Mr. Howell cannot satisfy the fourth element of his IIED claim because Mr. Howell did not provide sufficient evidence for a reasonable jury to conclude he suffered severe emotional distress.  Def.'s Mem. at 11–21; Def.'s Reply at 1, 7–10.  While Mr. Howell provided medical records documenting his mental health treatment, Yale argues the records do not show Mr. Howell experienced severe emotional distress. because the records do not connect the treatment Mr. Howell received to the comments of a Yale employee.  Def.'s Mem. at 16–18; <u>see</u> Def.'s Reply at 7.

Mr. Howell responds that he has presented evidence upon which a reasonable jury could conclude he suffered severe emotional distress as a result of the statements of Yale employees.  Pl.'s Opp'n at 13–18.  Mr. Howell cites portions of his affidavit, portions he did not cite in his Local Rule 56(a)(2) statement, where he describes feeling depressed, hopeless, sorrowful, and fatigued.  Pl.'s Opp'n at 13; Pl.'s Aff. at ¶¶ 17–20.  According to Mr. Howell, these emotions were severe enough that he sought mental health counseling, meeting with Ms. Farrell for approximately one hour on dozens of occasions.  Pl.'s Opp'n at 14.

8

"Connecticut courts have held that emotional distress is severe where it reaches a level which no reasonable person could be expected to endure." Almonte v. Coca-Cola Bottling Co. of N.Y., 959 F. Supp. 569, 575 (D. Conn. 1997); accord Buster v. City of Wallingford, 557 F. Supp. 2d 294, 302 (D. Conn. 2008). There is no "bright-line test for determining what kinds of mental distress are sufficiently serious;" however, Connecticut courts have frequently turned to Restatement when evaluating the severity of a plaintiff's distress. Maselli v. Reg'l Sch. Dist. No. 10, 198 Conn. App. 643, 667 (2020). According to the Restatement, emotional distress "includes all highly unpleasant mental reactions . . . . The intensity and the duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46 cmt. j (1965). Though evidence of medical treatment is not necessary to establish severe emotional distress, Powell v. Jones-Soderman, 433 F. Supp. 3d 353, 378 (D. Conn. 2020), aff'd, 849 F. App'x 274 (2d Cir. 2021), "[e]motional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise." Maselli, 198 Conn. App. at 667; see also Perez-Dickson v. City of Bridgeport, 304 Conn. 483, 529 (2012) (noting the plaintiff had offered no evidence of medical treatment in concluding the plaintiff failed to establish she suffered severe emotional distress).

The medical records Mr. Howell has provided do not include a single mention of his sessions with Ms. Farrell, the professional with whom he claims to have discussed his severe emotional distress. See Def.'s Ex. F. Mr. Howell's medical records only include references to sessions between Mr. Howell and Ms. Mignosa. See id. Further, the court is unable to identify any instance within the records where Mr. Howell

mentions the subject of this lawsuit, his experiences with Yale, let alone connect it to his impaired mental health.  See id.  Indeed, session notes dated after the events at Yale show that Mr. Howell represented to Ms. Mignosa that he was generally doing well.  On December 4, 2019, just a few weeks after the supposed events at Yale, Mr. Howell met with Ms. Mignosa and reported that he "has been doing well, more like himself than he has [been] in a long time."  Id. at 19.  The entry further explains he is "getting back into the work force and [has a] new business venture with his [girlfriend]."  Id.  An entry dated March 4, 2020, notes that Mr. Howell "[c]ontinues in [his] business venture with [his girlfriend], [which] has been going well."  Id. at 21.  The entry, like other entries, also discusses certain of Mr. Howell's cardiovascular medical conditions.  Id. (discussing, inter alia congestive heart failure and atrial fibrillation).  While an entry dated April 19, 2021, notes that Mr. Howell separated from his girlfriend and has "a lot going on", the entry does not discuss his interactions with Yale.  Id. at 23.  The final entry, dated December 6, 2021, notes that Mr. Howell did not attend the scheduled session with Ms. Mignosa.  Id. at 25. Accordingly, Mr. Howell's medical records provide no support for his claim that he experienced severe emotional distress.

While medical records are not necessary to establish a plaintiff has experienced severe emotional distress, their absence makes it more difficult for the court to conclude a reasonable jury could find Mr. Howell experienced such distress.  See Aviles v. Wayside Auto Body, Inc., 49 F. Supp. 3d 216, 229 (D. Conn. 2014) (granting the defendant's Motion for Summary Judgment and noting the absence of medical treatment or observations of friends or family about changes in the plaintiffs' behavior that would signify severe emotional distress).  Because the Stony Creek medical

records do not document Mr. Howell's reaction to his alleged experiences with Yale employees, the only evidence describing his emotional distress in any detail is Mr. Howell's affidavit. Thus, the court must consider whether the affidavit is sufficient to create a material issue of fact upon which a reasonable jury could find Mr. Howell suffered severe emotional distress.

Mr. Howell avers that he received medical treatment for his emotional distress, receiving therapy from Ms. Farrell at Stony Creek. Pl.'s Opp'n at 14; Howell Aff. at ¶¶14–16. Despite receiving this treatment, Mr. Howell suggests in his affidavit that Ms. Farrell did not record their sessions. Pl.'s Opp'n at 14–15; Howell Aff. at ¶15. In his opposition memorandum, Mr. Howell asserts, without citing evidence, that "[i]t is not at all unusual in the experience of [Mr. Howell's counsel] that some therapists do not take notes" in order to protect their client's confidential communications. Pl.'s Opp'n at 14. Even if the court were to consider Mr. Howell's attestations about his receipt of medical treatment as something other than speculative, and contrary to the medical records he produced, the attestations do not provide sufficient evidence for a jury to find that his emotional distress was severe. For example, having reviewed the affidavit, the court is unable to locate any attestation as to the frequency of Mr. Howell's meetings with Ms. Farrell for the specific purpose of treating the emotional distress supposedly caused by the events at issue in this litigation. See Howell Aff. at ¶ 14 (attesting that Mr. Howell met with Ms. Farrell on 40 occasions in total, but failing to note the number of occasions during which he discussed his severe emotional distress); contra, Def.'s Ex. F (recording 14 scheduled sessions, none of which are with Ms. Farrell). Similarly, Mr. Howell asserts in his opposition memorandum that Ms. Farrell treated him for

depression, among other symptoms. Pl.'s Opp'n at 14 (citing Howell Aff. at ¶ 14). However, the cited portion of the affidavit does not discuss the specific symptoms treated by Ms. Farrell. See Howell Aff. at ¶ 14.

Mr. Howell's affidavit catalogues a variety of symptoms from which he says he suffered as a result of Yale employees' conduct. Howell Aff. at ¶¶ 17–23; Pl.'s Opp'n at 13. For example, he avers that he felt "a deep sense of sorrow", "great hopelessness", and "a deep sense of fatigue" because of the comments. Id. at 13–14; Howell Aff. at ¶¶ 17–23 (also describing feelings of humiliation and devastation). Mr. Howell also claims he experienced insomnia for approximately one year, which worsened after Mr. Signore's comments, and subsequently diminished. Id. at ¶ 24. While Mr. Howell claims the insomnia returned after he filed this lawsuit, he does not claim that insomnia was caused by the comments at issue, but rather by the lawsuit itself. See id. Indeed, the Stony Creek medical records suggest Mr. Howell had trouble sleeping before the events at Yale are alleged to have occurred. Def.'s Ex. F at 1 (records from an April 4, 2018, session note Mr. Howell had anxiety that interfered with his sleep); Def.'s Ex. F at 15 (records from an August 7, 2019, session report Mr. Howell experienced "sleep issues again.").

The record before the court, including Mr. Howell's affidavit, is insufficient for a jury to reasonably conclude Mr. Howell experienced severe emotional distress. See Drew v. K-Mart Corp., 37 Conn. App. 239, 252 (1995) ("great humiliation" is not sufficiently severe to support a finding of IIED); Almonte, 959 F. Supp. at 575 (symptoms of insomnia, depression, and anxiety are insufficient to establish severe emotional distress "[a]bsent some evidence that plaintiff suffered these symptoms to an

12

extraordinary degree"). Even if Mr. Howell's affidavit described his emotional distress in greater detail, it is not clear the descriptions would be sufficient because a "[p]laintiff's own descriptions of h[is] anxiety and fear do not suffice to defeat summary judgment." DeLorco v. Waveny Care Ctr, Inc., No. 3:16-CV-01594 (VLB), 2018 WL 4078276, at *11 (D. Conn. Aug. 27, 2018) (citing Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y., 310 F.3d 43, 55 (2d Cir. 2002)); see also Bloom v. Town of Stratford, No. 3:05-CV-217 (PCD), 2006 WL 3388396, at *15 (D. Conn. Nov. 16, 2006) (granting a summary judgment motion when the only evidence of the plaintiff's severe emotional distress was his testimony that he experienced insomnia, anxiety, and anger); Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986) (granting a summary judgment motion when the plaintiff offered only deposition testimony that he experienced feelings of distress, incompetence, "and all sorts of things which are undesirable").

Having concluded Mr. Howell has failed to adduce evidence upon which a reasonable jury could find he suffered severe emotional distress, the court grants Yale's Motion for Summary Judgment.

    B.    <u>Motion to Seal</u>

Yale moves to seal certain documents it has submitted in support of its Motion for Summary Judgment. See Def.'s Mot. Seal. Those documents are: portions of Yale's Local Rule 56(a)(1) Statement; portions of Yale's Memorandum of Law in Support of Motion for Summary Judgment; and Yale's Exhibits 1 and 6, and D, E, and F. Def.'s Mot. Seal at 2; see also Def.'s Mem. Seal. Yale moves to seal because the documents discuss Mr. Howell's medical history. Mr. Howell does not oppose the Motion to Seal.

"The Second Circuit has instructed that 'documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial

documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'" Burns v. Rovella, et al., No. 3:19-CV-553, 2021 WL 4263372, at *7 (D. Conn. Sept. 20, 2021) (quoting Trump v. Deutsche Bank AG, 940 F.3d 146, 151 (2d Cir. 2019)).  A court determines if sealing is appropriate "on the basis of a careful document-by-document review of the particular portions of the document that a party wishes to be kept under seal and after considering whether the requested order is no broader than necessary to serve the interests that require protection." Von Spee v. von Spee, No. 3:05-CV-1488, 2007 WL 9753045, at *1 (D. Conn. Aug. 23, 2007) (citing U.S. v. Amodeo, 71 F.3d 1044, 1050–51 (2d Cir. 1995)).  "[A] judicial document may be withheld from public access only if the court concludes that the presumption of public access—whose weight depends on the nature of the document—is outweighed by 'competing considerations' such as, e.g., privacy interests, public safety, or attorney-client privileged information." U.S. v. Litvak, No. 13-CR-19, 2015 WL 328876, at *2 (D. Conn. Jan. 23, 2015) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)).  If a court determines that sealing is appropriate, it must make "'specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Litvak, 2015 WL 328876, at *2 (quoting In re New York Times Co., 828 F.2d 110, 117 (2d Cir. 1987)).

The court concludes Mr. Howell's privacy interest outweighs the presumption of public access to certain court documents and that the sealing or redacting certain of the documents is essential to preserving Mr. Howell's privacy interest. Principal Nat. Life Ins. Co. v. Coassin, No. 13-CV-1520, 2015 WL 3466111, at *2 (D. Conn. June 1, 2015).

Accordingly, with regard to Exhibit D, because only a portion of it contains sensitive personal information, Mr. Howell's address, social security number, and date of birth, the court grants Yale's motion as to Exhibit D, and orders Yale to redact the information just described.  The court grants the Motion to redact the entirety of Exhibit F and to file it under seal because it contains Mr. Howell's detailed medical history.

Because Exhibit E merely names the facility that treated Mr. Howell, the name of which the court has mentioned in this Ruling, <u>see</u>, <u>supra</u>, the court denies Yale's Motion to redact any portion of this document.  For the same reason, the court denies Yale's Motion to redact portions of Exhibit 6, which as relevant here, includes the name and address of the facility that allegedly treated Mr. Howell.

As to Exhibit 1, Yale's Local Rule 56(a)(1) Statement, and Yale's Memorandum of Law in Support of Motion for Summary Judgment, the court grant's Yale's Motion to Seal to the extent it seeks to redact portions of its Exhibit 1, Local Rule 56(a)(1) Statement, and Memorandum of Law in Support of Motion for Summary Judgment that the court does not cite to in this Ruling.  Thus, Yale's proposed redactions may remain to the extent the court does not cite to, or rely on, the redacted portions of these documents in connection with this Ruling.

## V.     CONCLUSION

For the reasons stated above, the court grants the defendant's Motion for Summary Judgment (Doc. No. 107).  The court grants in part and denies in part Yale's Motion to Seal (Doc. No 105).

Yale is ordered to refile redacted versions of Exhibits 1, D, and F, and unredacted versions of Exhibits E and 6, in accordance with this Ruling.  Yale is also ordered to file redacted versions of its Local Rule 56(a)(1) Statement and Memorandum

of Law in Support of Motion for Summary Judgment, the court accepts Yale's proposed redactions to the extent the court does not cite to those portions in its Ruling. Yale must refile the documents within twenty-one (21) days of the entry of this Ruling.

**SO ORDERED.**

    Dated at New Haven, Connecticut this 20th day of March 2025.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge